UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEVELT LEFFALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15-CV-398-SPM |
| | ) |
| CITY OF ELSBERRY, MISSOURI, and | ) |
| BRANDIN RANEY, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment filed by Defendant City of Elsberry, Missouri and Defendant Brandin Raney. (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 3). For the following reasons, Defendants' motion will be granted in part and denied in part.

**I.   FACTUAL BACKGROUND**

On April 5, 2014, the Elsberry Police Department received a report of a domestic assault and child endangerment committed by Plaintiff Levelt Leffall ("Plaintiff"). Defendant Brandin Raney ("Defendant Raney"), then a law enforcement officer employed by the City of Elsberry ("the City"), was dispatched to find and arrest Plaintiff. Peyton Archer ("Deputy Archer"), then a deputy of the Lincoln County Sherriff's Department, was called as an outside agency assist by the City to assist Defendant Raney with the arrest of Plaintiff. The officers found Plaintiff's vehicle at the address where Plaintiff lived. Defendant Raney went to the back door of the residence and made contact with Plaintiff, and Deputy Archer then walked to the back of the house and joined

1

them. Defendant Raney advised Plaintiff that he was under arrest. The details of what happened next are in dispute. According to the deposition testimony of Deputy Archer, Plaintiff was argumentative and used passive resistance to avoid being handcuffed, the officers pushed him up against the door of his house to secure him, Plaintiff tried to turn sideways or "blade" to avoid being handcuffed, Plaintiff tried to pull his right arm away, the officers took him to the ground and were able to handcuff him. Deputy Archer also testified that Plaintiff used passive resistance and attempted to fall to the ground when the officers were attempting to take him to the police car, such that the officers had to hold him up. (Deposition of Deputy Archer, Doc. 22-2, at pp. 21-28). Plaintiff, on the other hand, has submitted an affidavit contradicting several of those facts. He states that he did not argue with Defendant Raney or Deputy Archer, did not attempt to turn sideways or pull his arm away when he was shoved up against the door of his residence, and walked to the police car without attempting to fall to the ground. (Affidavit of Plaintiff, Doc. 28-1).

After his arrest, Plaintiff was taken to the Lincoln County Jail. The corrections officer there indicated on a check-box form that he did not observe any signs of obvious injuries. (Doc. 22-3, at p. 5). According to Plaintiff's affidavit, Plaintiff requested to be taken to the hospital for treatment while at the jail, and his requests were refused. (Affidavit of Plaintiff, Doc. 28-1). On April 9, 2014, the day Plaintiff was released from jail on bond, he went to the Emergency Department of SSM St. Joseph Hospital West, complaining of left elbow pain and swelling from an incident four days earlier in which "he was handcuffed and officer slammed him to the ground." (Doc. 22-5, at p. 4). An X-ray showed that Plaintiff's elbow was fractured. His arm was placed in a sling, he was prescribed Percocet and other medications, and he was advised to follow up with orthopedics. According to Plaintiff's affidavit, his left elbow was not injured in any way prior to the arrest on

April 5, 2014, and was not harmed by any person or object between the arrest and his visit to the hospital.

On March 3, 2015, Plaintiff filed the instant action, asserting that Defendant Raney violated his rights under the Fourth Amendment and 42 U.S.C. § 1983 by using excessive force (Count I); that the City violated his rights under the Fourteenth Amendment and 42 U.S.C. § 1983 by delegating policymaking duties to Defendant Raney, by failing to train, supervise, or control Defendant Raney, and through a pattern of transgressions that included Defendant Raney's actions (Count II); that the City was liable for Defendant Raney's actions under a *respondeat superior* theory (Count III); that Defendant Raney and the City are liable for assault under Missouri state law (Count IV); and that Defendant Raney and the City are liable for battery under Missouri state law (Count V). On March 11, 2016, Defendants filed the instant motion for summary judgment on all of Plaintiff's claims.

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Avon State Bank v. BancInsure, Inc.*, 787 F.3d 952, 956 (8th Cir. 2015). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the nonmoving party must then set forth affirmative evidence from

which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. The nonmoving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. In ruling on a summary judgment motion, the Court must review the facts in the light most favorable to the nonmoving party and must give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006).

**III. DISCUSSION**

In his Complaint, Plaintiff asserts several counts against Defendant Raney and several counts against the City, and Defendants move for summary judgment on each count. The Court will address each in turn.

**A. Count I: Excessive Force (Against Defendant Raney)**

In Count I, Plaintiff alleges that Defendant Raney used excessive and unreasonable force in conducting Plaintiff's arrest, thereby violating Plaintiff's rights under the Fourth Amendment. Defendant Raney moves for summary judgment, arguing that the amount of force he used during the arrest was reasonable and that he is entitled to qualified immunity.

"'Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known.'" *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 896 (8th Cir. 2014) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). A government official is entitled to qualified immunity unless "(1) the facts alleged or shown, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, *and* (2) the right was clearly established as of [the date of the alleged violation], such that a reasonable

4

official would have known that his actions were unlawful." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014) (internal quotation marks omitted). However, "[i]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008).

The Court first considers the first prong of the qualified immunity analysis. In assessing whether there has been a violation of the right to be free from excessive force under the Fourth Amendment, "the test is whether the amount of force used was objectively reasonable under the particular circumstances.'" *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006) (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)). The factors to be considered in assessing reasonableness include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of a particular use of force is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The Eighth Circuit has noted that an "actual injury" may be required to prove a Fourth Amendment excessive force claim. *Davis v. White*, 794 F.3d 1008, 1012 (8th Cir. 2015). A *de minimis* injury may support the conclusion that the officer did not use excessive force. *See id.*; *see also Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).

After review of the record, the Court concludes that genuine issues of material fact exist regarding whether Defendant Raney's use of force was objectively reasonable under the circumstances. Viewing the evidence in the light most favorable to Plaintiff, Defendant Raney shoved Plaintiff up against his house and pushed him to the ground during the course of the arrest, using sufficient force to fracture his elbow, despite the fact that Plaintiff was not arguing with the officers, threatening the officers, physically resisting arrest, or attempting to flee. The Eighth Circuit has made it clear that in the absence of physical resistance, threats, or attempts to flee, it is not reasonable for an officer to use more than *de minimis* force in effecting an arrest. *See Shannon v. Koehler*, 616 F.3d 855, 864 (8th Cir. 2010) ("Assuming, then, that [the plaintiff's] story is true—*i.e.,* assuming he was not threatening anyone, not resisting arrest, and so on—it was not reasonable for [the officer] to use more than *de minimis* force against him."); *Bauer v. Norris,* 713 F.2d 408, 413 (8th Cir. 1983) ("'Force can only be used to overcome physical resistance or threatened force.'") (quoting *Agee v. Hickman*, 490 F.2d 210, 212 (8th Cir. 1974)); *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981) ("There is no occasion for the use of any force against [an arrestee] who quietly submits."). Defendant cites no authority to suggest that pushing someone to the wall and ground with sufficient force to break his elbow constitutes a *de minimis* use of force, nor is a fractured elbow the sort of minor injury that courts have previously found suggests that officers used only *de minimis* force. *See Davis*, 794 F.3d at 1012 (collecting cases and noting that courts had sometimes found "relatively minor scrapes and bruises" and "soreness and bad headache" to be *de minimis* but had not so held for more serious injuries).

Defendant Raney argues that his use of force was reasonable in light of Plaintiff's verbal and physical resistance to the arrest and the serious and violent nature of the charges against Plaintiff. He relies on several cases finding it objectively reasonable for an officer to use force to

arrest a suspect who was physically resisting arrest and/or attempting to flee. *See Mann v. Yarnell*, 497 F.3d 822, 826-27 (8th Cir. 2007) (affirming summary judgment in officers' favor where the officers testified that the suspect had physically resisted arrest and attempted to escape and the plaintiff produced no evidence that contradicted the officers' account); *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006) (affirming summary judgment in officers' favor where the officers forcibly pulled a noncompliant suspect from his truck, forcibly pulled his hands behind his back to handcuff him when he persisted in lying on his hands, and then forcibly stood him up when he refused to stand; noting that "[w]hen a suspect is passively resistant, somewhat more force may reasonably be required"); *McKenney v. Harrison*, 635 F.3d 354, 359-60 (8th Cir. 2011) (officer's use of Taser was reasonable where the arrestee "made a sudden movement toward the window, which the officers reasonably interpreted as an active attempt to evade arrest by flight," because "the officers were entitled to use force to prevent [the suspect's] escape and effect the arrest").

These cases are inapposite in light of the factual dispute in this case. To accept Defendant Raney's argument and apply these cases, the Court would have to accept as true Deputy Archer's testimony that Plaintiff did physically move his body in ways that prevented the officers from handcuffing him, despite Plaintiff's affidavit stating that he did not. Defendant Raney argues that the statements in Plaintiff's affidavit are "conclusory" and "self-serving" and implicitly suggests that the Court should disregard or discount them. That suggestion is without merit. First, the statements in Plaintiff's affidavit are not conclusory; they are straightforward statements of fact regarding Plaintiff's own actions during the incident, based on his own personal knowledge. Second, the fact that the statements in Plaintiff's affidavit are "self-serving," in the sense that they support his case, does not provide a basis on which to disregard them. As the Eighth Circuit recently explained:

> The Federal Rules of Civil Procedure expressly contemplate the use of affidavits, depositions, interrogatory answers, and declarations as permissible forms of evidence at the summary judgment stage. Fed. R. Civ. P. 56(c)(1)(A) & (c)(4). Neither the absence of written reports nor the self-serving nature of affidavits, interrogatory answers, or deposition testimony serve to make such evidence inherently infirm. As such, we generally do not discount such evidence at the summary judgment stage.

*Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015). Although the Eighth Circuit has recognized that the court "may discount a plaintiff's self-serving affidavit or deposition testimony as a matter of law where it clearly contradicts the plaintiff's earlier testimony under oath and where the plaintiff offers no explanation for the inconsistencies," *id.*, this case does not present such a situation. There is no deposition testimony from Plaintiff in the record before the Court, and Defendants point to no contradictions between Plaintiff's statements in the affidavit and any prior statements by Plaintiff. Thus, the Court will not disregard Plaintiff's affidavit.

Plaintiff has produced sufficient evidence, through his affidavit and hospital records, from which a reasonable jury could conclude Defendant Raney used a level of force in arresting Plaintiff that was objectively unreasonable under the circumstances. The Court acknowledges that a jury may ultimately weigh the evidence and decide that Defendants' evidence regarding what happened during the arrest is more credible than Plaintiff's evidence. However, such weighing of the evidence is not the role of the Court at the summary judgment stage. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury questions, not those of a judge.") (quotation marks omitted). Because there are genuine issues of material fact regarding whether Plaintiff resisted the officers' attempts to arrest him, the Court cannot say as a matter of law that Defendant Raney's use of force was objectively reasonable under the circumstances. *See Henderson*, 439 F.3d at 503 (affirming denial of summary judgment on an excessive force claim

where the defendant officer's position was that the plaintiff was resisting arrest but the plaintiff denied resisting arrest; noting that the officer's argument "ignores our duty at the summary judgment stage to view the evidence in the light most favorable to [the plaintiff], the nonmoving party").

The Court next turns to the second prong of the qualified immunity analysis. Under this prong, the Court must determine whether the right in question was "clearly established at the time of the defendant's alleged misconduct." *De Boise*, 760 F.3d at 896 (quoting *Brown*, 574 F.3d at 496). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

The Court finds that genuine issues of material fact exist that preclude entry of summary judgment based on this prong. "[T]he right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against searches and seizures." *Munn*, 439 F.3d a 503 (citing *Graham*, 490 U.S. at 394). Moreover, the case law discussed above clearly established, long before the incident at issue here, that it is unreasonable for an officer to use more than *de minimis* force against a suspect in the absence of physical resistance, threats, or attempts to flee. *See Shannon*, 616 F.3d at 86; *Bauer*, 713 F.2d at 413; *Feemster*, 661 F.3d at 89. In light of this clearly established law, no reasonable officer could have believed that it was reasonable to push a suspect against the wall and to the ground with sufficient force to fracture his elbow when the suspect was not physically resisting, threatening the officer, or attempting to flee. When the disputed facts are viewed in the light most favorable to Plaintiff, that is what Defendant Raney did. Thus, Defendant Raney is not entitled to summary judgment based on the second prong of the qualified immunity analysis.

Defendant Raney argues that because Plaintiff *was* resisting arrest, a reasonable officer in his position would have believed it was reasonable to use force. However, as with the first prong, accepting this argument would require the Court to ignore the genuine factual dispute concerning Plaintiff's behavior during the incident. While the jury may credit Defendants' version of events and discredit Plaintiff's version of events at trial, "it is not [the court's] function to remove the credibility assessment from the jury." *Henderson*, 430 F.3d at 504 (finding genuine issues of material fact precluded summary judgment on the second prong of the qualified immunity analysis because of the parties' "sharply conflicting accounts" with respect to whether Plaintiff resisted arrest).

For all of the above reasons, Defendant Raney is not entitled to qualified immunity on Count I, and his motion for summary judgment on Count I will be denied.

### B. Count II: Delegation, Failure to Train, and Pattern of Transgressions (Against the City)

In Count II, Plaintiff asserts several theories of liability against the City related to Defendant Raney's actions. First, he alleges that the policy maker for the City delegated to Defendant Raney the authority to make policy, which rendered the City liable for constitutional violations committed by Defendant Raney. Second, he alleges that the City failed to properly train, supervise, and control Defendant Raney. Third, he alleges that the acts of Defendant Raney were part of a pattern of transgressions of which Defendant City of Elsberry knew or should have known. Defendants moved for summary judgment on Count II in its entirety.

After Defendants filed their motion for summary judgment, Plaintiff filed a "Voluntary Dismissal" of Count II, which the Court construed as a motion for leave to dismiss Count II without prejudice. The City filed a memorandum requesting that the Court issue an order dismissing Count II *with* prejudice, noting that a dismissal without prejudice would be prejudicial

to the City because it would leave open the opportunity for Plaintiff to re-file a claim that could have been disposed of through the already-pending summary judgment motion and would result in unnecessary use of the City's and the Court's time and resources. Plaintiff has not submitted any response to the motion for summary judgment on Count II and has not presented any argument to support a dismissal without prejudice.

For the reasons stated in Defendant's memorandum, the Court finds that Defendants' motion to dismiss Count II should be granted and that the dismissal should be with prejudice. Defendants' motion for summary judgment on Count II will be denied as moot.

### C. Count III: *Respondeat Superior* Liability (Against the City)

In Count III, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the City based on a *respondeat superior* theory. However, as Plaintiff acknowledges in his response brief, this claim is foreclosed by controlling Supreme Court precedent. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions.") (citations and quotation marks omitted); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) ("It is well-established, however, that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Because it is undisputed that this claim fails as a matter of law under existing Supreme Court precedent, Defendants' motion for summary judgment on Count III will be granted.

### D. Counts IV (Assault) and V (Battery) (Against Defendant Raney and the City)

In Count IV, Plaintiff alleges that Defendant Raney's actions constituted assault under

Missouri law, and in Count V, he asserts that Defendant Raney's actions constituted battery under Missouri law. He also asserts each claim against the City based on a *respondeat superior* theory. Each defendant moves for summary judgment on these claims.

*1. The City's Motion for Summary Judgment on Counts IV and V*

The City argues that it is entitled to summary judgment on Counts IV and V based on sovereign immunity. Under Missouri law, "political subdivisions have sovereign immunity from state tort claims under Mo. Rev. Stat. § 537.600, except in three enumerated circumstances." *Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). Sovereign immunity may be waived (1) where public employees are involved in an automobile accident, (2) where injuries are cause by the condition of public property if the land is kept in a dangerous condition, or (3) when a political subdivision purchases liability insurance. *Id.* (citing Mo. Rev. Stat. §§ 537.600 & 537.610). The only type of waiver relevant here is the one based on insurance. Where the insurance waiver is at issue, "[w]hether sovereign immunity is waived in a particular case depends on whether the plaintiff's claims fall within the purposes covered by the defendant's policy." *Epps v. City of Pine Law*n, 353 F.3d 588, 594 (8th Cir. 2003).

The City argues that it has not waived its sovereign immunity here, because its liability insurance policy is limited to coverage for injuries resulting from the operation of motorized vehicles and dangerous conditions of a public entity's property and does not cover the incident at issue in this case. In his response, Plaintiff states that he has reviewed the insurance policy and that he acknowledges that sovereign immunity applies to the assault and battery claims he asserted against the City. *See* Pl's. Mem. Opp., Doc. 29, at p. 11. Because it is undisputed that sovereign immunity bars these claims against the City, the Court will grant the City's motion for summary judgment in its favor on Counts IV and V.

*2. Defendant Raney's Motion for Summary Judgment on Counts IV and V*

Defendant Raney argues that the assault and battery claims against him are barred by official immunity. "[U]nder Missouri law, 'the doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties.'" *Hawkins v. Holloway*, 316 F.3d 777, 788–89 (8th Cir. 2003) (quoting *Harris v. Munoz*, 43 S.W.3d 384, 387 (Mo. Ct. App. 2001)).[1] Official immunity does not apply to discretionary acts done in bad faith or with malice. *Id.* "Bad faith or malice generally requires actual intent to cause injury." *Blue v. Harrah's N. Kansas City*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* (internal quotation marks omitted). Bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* (internal quotation marks omitted). The official immunity doctrine "can also be overcome by showing conscious wrongdoing." *Id.*

Defendant Raney argues that he is entitled to official immunity because the amount of force he used during Plaintiff's arrest was objectively reasonable under the circumstances, and thus there could be no bad faith or malice. The Court disagrees. As discussed above, if Plaintiff's version of events is taken as true, as it must be at this stage, Defendant Raney inflicted physical harm on Plaintiff that was sufficient to break his elbow, despite an absence of physical resistance or even verbal argument from Plaintiff. This is sufficient to suggest that Defendant Raney was engaged in conscious wrongdoing or had an intent to injure Plaintiff, such that official immunity

---

[1] The parties appear to agree that Defendant Raney's use of force to effect an arrest here was a discretionary act.

would not apply.

Other than official immunity, Defendant Raney offers no other basis on which the Court could grant summary judgment in his favor on Count IV or Count V. Because Defendant Raney has not shown that he is entitled to summary judgment based on official immunity, the Court will deny his motion for summary judgment on Counts IV and V.

## IV.  CONCLUSION

For all of the above reasons, the Court finds that Count II should be dismissed with prejudice pursuant to Plaintiff's motion; that the City is entitled to summary judgment on Counts III, IV, and V; and that genuine issues of material fact preclude entry of summary judgment on the claims against Defendant Raney on Counts I, IV, and V.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Voluntary Dismissal" of Count II (Doc. 26), construed as a motion to dismiss Count II, is **GRANTED**. Count II of Plaintiff's Complaint is **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. With respect to Count I, the motion is **DENIED**. With respect to Count II, the motion is **DENIED** as moot. With respect to Count III, the motion is **GRANTED**. With respect to Counts IV and V, the motion is **GRANTED** with respect to Defendant City of Elsberry and **DENIED** with respect to Defendant Brandin Raney.

_/s/ Shirley P. Mensah_
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of May, 2016.